# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| EMMITT G. ROSCOE, <br>     Plaintiff, <br><br> v. <br><br> LARRY MULLINS, <br>     Defendant. | Civil Action No. 7:18cv00132 <br> **MEMORANDUM ORDER** <br><br> By: Hon. Pamela Meade Sargent <br> United States Magistrate Judge |

This matter is before the court on the plaintiff's Motion For Sanctions, (Docket Item No. 41) ("Motion"). An evidentiary hearing was held on the Motion on March 5, 2019. Based on the evidence and arguments presented by the parties, the Motion is **DENIED** for the reasons set out below.

## *I. Facts*

In this 42 U.S.C. § 1983 action, the plaintiff, Emmitt G. Roscoe, a Virginia Department of Corrections, ("VDOC"), inmate incarcerated in Red Onion State Prison, ("Red Onion"), claims that Larry Mullins, a disciplinary hearings officer at Red Onion, violated his due process rights under the Fourteenth Amendment to the United States Constitution in disciplinary hearings held June 13, 2017. The Motion seeks the imposition of sanctions against Mullins for failing to preserve a surveillance video recording taken outside of the A & B Dining Hall on May 26, 2017, the date on which Roscoe was charged with violating Disciplinary Offense Code 129 for approaching a person in a threatening manner. Roscoe also was charged with attempting to incite a riot on May 26, 2017.

Roscoe testified at the March 5 hearing that he was charged with two disciplinary offenses at Red Onion on May 26, 2017. Roscoe conceded that, prior to his disciplinary hearings, he never filed any written request asking that the surveillance video recordings of the outside of the A & B Dining Hall on the date and time of his charges be preserved. Instead, he testified that VDOC policy required that he verbally request the hearings officer to review the video evidence. In fact, Roscoe said the form used to request documentary evidence for a disciplinary offense hearing specifically states that it is not to be used to request video recordings. Roscoe testified that, at his June 13, 2017, disciplinary hearings, he requested that Hearings Officer Mullins review the video recording of the outside of the A & B Dining Hall for the date and time of his alleged violation of Offense Code 129.

After his disciplinary hearings on June 13, 2017, Roscoe said, he became worried about the surveillance video being preserved, so he filed a request that it be preserved by placing the request form in his cell door so the night shift correctional officers could collect it. When he did not receive a response to this request, Roscoe said, he filed another request to preserve the video recording with J. Fannin, the Institutional Investigator, on June 18, 2017. When Fannin did not respond to this request, he said, he sent a request form to the Warden on June 28, 2017, asking that the video recording be preserved. Roscoe said that the Warden never responded to this request. Roscoe also stated, on his appeal of his disciplinary offense conviction, he asked the Warden to review the video evidence.

Roscoe admitted VDOC Operating Procedure, ("OP"), 030.1 Evidence Collection And Preservation, into evidence as Plaintiff's Exhibit No. 1. The Exhibit was admitted into evidence under seal because it deals with security

operations at VDOC facilities and is not available for inmate review. OP 030.1 states that it "provides guidance for the proper collection, documentation, control, preservation, and disposal of all types of evidence" within the VDOC. (Docket Item No. 58 at 1.) According to OP 030.1, institutional investigators and intelligence officers can copy and download digitally stored evidence, which would include video recordings. (Docket Item No. 58 at 4.) OP 030.1 also states that, if a grievance is received that references a specific video recording, a copy of the recording "shall be saved." (Docket Item No. 58 at 4.) It further states that any digital evidence shall be retained for at least five years after the date of the incident. (Docket Item No. 58 at 4.) It also states that, if a lawsuit is filed or an investigation is in progress, digital evidence "shall be retained until the investigation or lawsuit is completed." (Docket Item No. 58 at 4.)

Roscoe further testified that VDOC OP 861.1 Offender Discipline, which was submitted as an exhibit to Mullins's Affidavit in support of his motion for summary judgment, refers to how an inmate can request video camera footage as evidence. A review of OP 861.1, shows that it states "[i]f the offender requests the review of video/audio recording …, the need to review such recordings … is determined by the Hearings Officer." (Docket Item No. 25-1 at 84.)

Red Onion Warden, Jeff Kiser, also testified at the evidentiary hearing. Kiser said that he was aware of the disciplinary charges against Roscoe, and he considered Roscoe's appeal of his convictions. Kiser stating that inciting a riot in prison was very serious, and, if an offender did incite a riot, he should be placed in restrictive housing. Kiser said that, while he upheld Roscoe's convictions and penalties, he did not uphold a recommendation that he be designated to segregation

housing on a long-term basis because he wanted to encourage Roscoe to change his behavior.

Kiser said that he did not recall ever telling Roscoe that the disciplinary charges against him were "bogus." He said that he did review the video recording taken by the surveillance cameras located inside the Dining Hall on May 26, 2017, but did not review any video recording taken by cameras located outside of the Dining Hall. Kiser said, that, based on his knowledge, Roscoe did not request that the video recording from outside of the Dining Hall be preserved. Kiser said he did not recall that he ever received any request form requesting the video recording from outside of the Dining Hall be preserved. He testified that he did not instruct anyone to preserve or not to preserve the video recording from cameras located outside of the Dining Hall.

Kiser testified that only wardens and intelligence officers had access to surveillance video recordings. He said that, if a hearings officer wished to review a surveillance video recording, the hearings officer would have to go to an intelligence officer, who would retrieve the video so the hearings officer could view it. Kiser said that Defendant Mullins was not an investigator at Red Onion. Instead, he said, Lt. Fannin was the Investigator at Red Onion at the time that Roscoe was charged with these disciplinary offenses.

Kiser said that he knew he reviewed the video recording from the surveillance cameras located inside the Dining Hall when considering Roscoe's appeals. He said he could have reviewed the video recording earlier, but he did not recall if he did. Kiser said that Fannin is the person who downloaded and preserved the video recording from the cameras inside the Dining Hall. Kiser said that he

believed that Fannin downloaded and preserved the video recording from inside the Dining Hall on his own initiative, but he admitted that it was possible that he had instructed Fannin to do so.

Lt. Joe Fannin, the Institutional Investigator at Red Onion, also testified at the evidentiary hearing. Fannin stated that he was instructed to preserve the video recording from inside the Dining Hall due to the serious nature of the incident. He said that he did not recall who instructed him to preserve this video recording. Fannin admitted that he could have downloaded and preserved the video recording of the inside of the Dining Hall on his own initiative, but his recollection was that someone orally had asked him to do so. Fannin said that, if an offender sent a request to preserve a video recording or if a staff member made a request to preserve a video recording, he would preserve it. Fannin said that he never received any request from Roscoe to preserve any video footage related to his disciplinary charges. He said that, to his knowledge, Mullins, Kiser and Officers Childress[1] and Gardner also did not receive any request to preserve the video recording of the outside of the Dining Hall.

Fannin said he was not sure whether Defendant Mullins had access to view the Rapid Eye surveillance video recordings. He said that he thought Mullins could view the video recordings, but did not know if Mullins could download any of the system's video recordings. Fannin said that he did not recall Mullins ever asking to view any video recordings related to Roscoe's disciplinary charges. Fannin said that he had received requests from Roscoe to preserve other unrelated video recordings on other occasions, but he did not receive any request from Roscoe to preserve any video recordings with regard to this incident. Fannin also said that he

---

[1] Officer Childress is referred to as both Officer Childress and Officer Pain.

did not receive any request to preserve the video recording from the outside of the Dining Hall from Warden Kiser, Childress, Gardner or Mullins.

Fannin testified that he never reviewed the video recording of the outside of the Dining Hall regarding this incident. He further said that the Rapid Eye surveillance system cameras routinely recorded over earlier recordings approximately every 90 days. Fannin said that he did not know if offenders knew that video recordings were recorded over every 90 days on the Rapid Eye system. He said that no offender other than Roscoe has told him that the offender has sent him a request to preserve a video recording that he has not received. Fannin said that he does not see every disciplinary offense charge written, and he did not review video recordings regarding disciplinary offense charges unless requested to do so. He said that, if an offender asks for video recordings to be preserved, he would preserve the recordings to the extent they were still available.

Unit Manager Larry Collins also testified at the evidentiary hearing. Collins said that, in May 2017, he was the Unit Manager of the A Building at Red Onion. He said that Roscoe was housed in the A-4 Pod in May 2017. Collins said that he knew Roscoe was charged with inciting a riot and approaching another in a threatening manner on May 26, 2017, but he was not present at the time of the incident. He said that he read the staff reports of the incident. He also said that he did not request that anyone preserve any video recordings regarding the charges against Roscoe. Collins said that he did review the video recording of the inside of the Dining Hall when the decision was made to not assign Roscoe to long-term segregation housing. He said that he never reviewed any video recording of the outside of the Dining Hall. Collins said that he had access to view video recordings on the Rapid Eye system, but he did not know if he had the ability to preserve a

recording because he had never tried to do so. Collins said that he did not recall Roscoe ever requesting that he preserve the video recording of the outside of the Dining Hall at the time of the incident at issue.

Defendant Mullins also testified at the evidentiary hearing. Mullins stated that he was the disciplinary hearings officer who heard the two charges filed against Roscoe on May 26, 2017. Mullins said that he sent Counselor Kegley to speak with Roscoe to advise him with regard to his request for witnesses or documentary evidence. Mullins said that he asked the intelligence officers to identify the people who were present at the time of the incident. He said that he believed that an intelligence officer did review the video, but he did not remember who did this. He said, at that time, there were four intelligence officers at Red Onion, Fannin, Bentley, Murphy and Wright. He said that he remembers speaking to Bentley, but he did not know if Bentley ever viewed the video recording. Mullins stated that he never viewed the video recording of the inside of the Dining Hall. He said someone gave Roscoe the names of those present at the time of the incident, but he did not recall who gave Roscoe the names.

Mullins said that Roscoe requested inmate witnesses on both charges, and statements were taken and considered from these inmate witnesses. Mullins agreed that Roscoe asked him to review the video recordings, but he said that he did not because he had officers who were present and who testified to what occurred. Mullins said that he did not have access to the Rapid Eye video recordings unless he went to the Intelligence Office and viewed the recordings. He said that, at one point, he did have access to the Rapid Eye system, but he did not at the time of these charges. Mullins said that he was never told that he ever had the ability to preserve or download and save video recordings.

Mullins said that he gave the dates, times and locations of the two charges against Roscoe to the Intelligence Office with a request that the intelligence officers review the video recordings to determine who was present. He said that OP 861.1 only required him to preserve the evidence that he received and reviewed on a disciplinary charge. Mullins stated that, at his disciplinary hearings, Roscoe never specifically asked him to review the video recordings of the incident. Instead, Mullins said, Roscoe referenced what the video recordings would show. Mullins said that he did not take Roscoe's references to the video recordings as a request to review the recordings. Mullins did admit that he knew that Roscoe maintained that the video recordings contained relevant evidence on his charges. He further admitted that the video recordings might have contained relevant evidence. Mullins also said that, at his disciplinary hearing, Roscoe admitted that he stepped out of line, and, because of this admission, he did not think the video recording would help Roscoe.

Mullins conceded that OP 861.1 stated that an offender should not be convicted on the reporting officer's statement alone. Mullins stated that Roscoe's inmate witness, T. Murray, confirmed Roscoe's claim that Gardner told Roscoe and Murray to step out of line. Mullins said Officer Childress also confirmed that Gardner asked Roscoe to step out of line.

On redirect, Roscoe presented Mullins with a request form, dated June 14, 2017, asking that the video recordings regarding both charges be preserved. Mullins said that he did not recall receiving or responding to this form. Mullins said that, if he had received this form, he would have responded to the form. Mullins said that he did not know why the video recording of the outside of the Dining Hall was not preserved.

Counselor Leabough from Sussex I State Prison also testified at the evidentiary hearing. Her testimony was not relevant to the Motion; therefore, it is not outlined here.

*II. Analysis*

Federal Rules of Civil Procedure Rule 37(e) controls when sanctions may be imposed for a failure to preserve electronically stored information. *See Jenkins v. Woody,* 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); *In re: Ethicon, Inc.*, 2016 WL 5869448, at *2 (S.D. W.Va. Oct. 6, 2016). Rule 37(e) states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e). Thus, a number of requirements must be met before the court may sanction a party over the loss of electronically stored information. First, there must be a showing that the electronically stored information should have been preserved in the anticipation or conduct of litigation. Second, there must be a showing that the party who possessed the information failed to take reasonable

steps to preserve the information. Third, the information must be lost and cannot be restored or replaced through additional discovery. If these requirements are met, and the moving party can show prejudice from the loss of the information, the court may order measures "no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1); *see Muhammad v. Mathena*, 2016 WL 8116155, at \*8-9 (W.D. Va. Dec. 12, 2016). The most severe penalties, an unfavorable inference instruction or default judgment, may be entered only upon a finding that the party who failed to preserve the information "acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2); *see Muhammad*, 2016 WL 8116155 at \*8.

Based on the evidence before the court, I find that the facts do not support the imposition of any penalty against Defendant Mullins for the failure to preserve this recording. The evidence before the court shows that Mullins knew at the time of Roscoe's disciplinary hearings that Roscoe claimed the video recording of the outside of the A & B Dining Hall contained relevant evidence. The evidence also shows that Mullins did not request to view or to preserve this video recording. The evidence shows that the recording of the outside of the A & B Dining Hall on May 26, 2017, has been lost and cannot be restored or replaced. Nonetheless, I find that Roscoe has not shown that he has been prejudiced by the loss of this recording. If this recording existed, Roscoe could have used this recording, at best, to establish that he was instructed to step out of line, a fact that all the witnesses confirmed. Furthermore, by Memorandum Opinion entered this same date, the undersigned has ruled that Roscoe's conviction of the 129 Disciplinary Offense Code violation did not deprive him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. I also find that Roscoe has not shown that Mullins acted

with any intent to deprive him of the use of the video evidence in this litigation. Based on this, the Motion is denied.

The Clerk's Office shall provide a copy of this Memorandum Order to all counsel of record and unrepresented parties.

**ENTERED:** September 10, 2019.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE