# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **EMMITT G. ROSCOE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:18cv00132** |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LARRY MULLINS,** | ) | **By: Hon. Pamela Meade Sargent** |
| **Defendant.** | ) | **United States Magistrate Judge** |
| | ) | |

This matter is before the court on the Defendant's Motion For Summary Judgment, (Docket Item No. 24) ("Motion"), claiming, that summary judgment should be entered in his favor on the plaintiff's 42 U.S.C. § 1983 claim. A hearing was held on the Motion on March 5, 2019. Based on the evidence before the court, I will grant the Motion and enter summary judgment in the defendant's favor.

## *I. Facts*

In his sworn Complaint, (Docket Item No. 1), Emmitt G. Roscoe, who is incarcerated in the Virginia Department of Corrections, ("VDOC"), in Red Onion State Prison, ("Red Onion"), claims that Larry Mullins, a Disciplinary Hearing officer at Red Onion, violated his due process rights under the Fourteenth Amendment to the United States Constitution in disciplinary hearings held June 13, 2017. In particular, Roscoe claims his rights were violated because he was denied an advisor and documentary evidence and witnesses, the disciplinary hearing was "biased," and he was convicted of "fabricated charges."

In his Complaint, Roscoe stated that he was placed in segregation housing and charged with two disciplinary offense charges on May 26, 2017. The two charges were Offense Code 129 for approaching a person in a threatening manner, and 103/198B for attempting to commit/incite a riot. Roscoe said that, when these charges were served upon him, he requested an advisor, witnesses and documentary evidence.  Roscoe said that the charges were heard by Mullins on June 13, 2017.  According to Roscoe, he was not provided with an advisor, and his requests for documentary evidence and witnesses were denied by Mullins. He said that Mullins found him guilty of the two disciplinary charges and sentenced him to disciplinary segregation from May 26 to August 2, 2017.

Roscoe attached the two Disciplinary Offense Reports for the charges to his Complaint, (Docket Item No. 1-1). One Disciplinary Offense Report shows that Roscoe was charged with an Offense Code 129 violation for gathering around or approaching any person in a threatening manner on May 26, 2017, Case No. ROSP-2017-0662. (Docket Item No. 1-1 at 1.) On this form, the Reporting Officer, D. G. Gardner, stated:

> On the above date and approximate time I C/O Gardner was standing outside of the A&B chow hall as the NOI [Nation of Islam] services were exiting. I instructed offender Murray to step out of line so myself and officer Sexton could talk to him. At that point Offender E. Roscoe … stepped out of line and approached me in what I perceived as an aggressive manner. I then instructed him to get back in line. He ignored my orders and only got back in line after canine officer approached him and ordered him back in line.

(Docket Item No. 1-1 at 1.) This form shows that it was served on Roscoe on May 26, 2017, at which time Roscoe requested an advisor, witnesses and documentary evidence. (Docket Item No. 1-1 at 1.)

The other Disciplinary Report shows that Roscoe was charged with an Offense Code 103/198B for attempting to commit/incite a riot, rioting on May 26, 2017, Case No. ROSP-2017-0664. (Docket Item No. 1-1 at 3.) On this form, the Reporting Officer, Gardner, stated:

> On the above date and approximate time I c/o Gardner observed offender E. Roscoe … talking in an aggressive manner to the other offenders in the NOI religious service about how and I quote "caucasian America is trying to hold the black man down and we have to stand together and quit fighting amongst ourselves." Afterwards, several of the offenders ignored several orders to line up. I then observed offender E. Roscoe walk up and down the line talking with the other offenders in an aggressive manner. As he finished talking [he] would turn around and stare at c/o Childress and myself in what appeared to be an angry state.

(Docket Item No. 1-1 at 3.) This form shows that it was served on Roscoe on May 26, 2017, at which time Roscoe requested an advisor, witnesses and documentary evidence. (Docket Item No. 1-1 at 3.)

Another page of this Disciplinary Offense Report shows that Roscoe was found guilty of the 103/198B attempting to commit/inciting a riot/rioting charge by Mullins after a disciplinary hearing was held on June 13, 2017. Under the "Reason for Decision" section, Mullins wrote:

> C/O Gardner testified that after the NOI services where E. Roscoe … had made statements which suggested that blacks should "band together" against whites and they should stay together to defeat whites the offenders got agitated. The NOI attendees refused three orders to line up to exit the chow hall and did not do so until the gun post put the gun out the window. Further E. Roscoe was making comments to offenders in the line which caused them to turn toward the staff members present and give them aggressive looks. E. Roscoe testified that he did not tell anyone to do anything or to incite a riot

and that he could not make someone do anything. C/O Payne as witness confirmed the testimony of C/O Gard[]ner in describing the behavior/actions exhibited by the NOI participants. I determined that the behavior of and statement by E. Roscoe did inflame the group of offenders and I find that his actions do meet the definition of attempting to incite to riot/acting in a manner that disrupts the orderly operation of the institution.

(Docket Item No. 1-1 at 4.) The Report shows that Mullins imposed a loss of Roscoe's accumulated good time credit and 30 days in disciplinary segregation. Unit Manager Larry Collins approved the penalty imposed upon institutional review.

Roscoe also provided an Affidavit In Opposition To Defendants Summary Judgment, (Docket Item No. 34), ("Roscoe Affidavit"). In this Affidavit, Roscoe admitted that he told those attending the NOI meeting on May 26, 2017, that "Caucasian America is trying to hold the black man down and we have to stand together and quit fighting amongst ourselves." He specifically denied that he ever said that blacks should "band together against white and [ ] stay together to defeat the whites." Roscoe also stated that he was not provided an advisor and was forced to use the witnesses called by the hearing officer.

Defendant Mullins filed an Affidavit in support of the Motion. (Docket Item No. 25-1) ("Mullins Affidavit"). In this Affidavit, Mullins stated that he conducted two disciplinary hearings with Roscoe on June 13, 2017, for the offenses of attempting to commit/inciting to riot, Case No. ROSP-2017-0664, and gathering around or approaching any person in a threatening manner, Case No. ROSP-2017-0662. Mullins attached copies of the Disciplinary Offense Reports for these offenses to his Affidavit. (Docket Item No. 25-1 at 6, 32.) Mullins stated that, at the time an offender is served with a copy of a Disciplinary Offense Report, he is

advised of his right to have a staff advisor for his disciplinary hearing and to request witnesses or documentary evidence. Mullins stated that, typically, the officer serving the charge will act as an advisor to the offender with regard to his request for witnesses and documentary evidence. Mullins said that he did not know why the officer who served a copy of the Disciplinary Offense Reports on Roscoe did not do so in this case. Nonetheless, he stated that he sent a staff advisor to assist Roscoe prior to his hearings, and Roscoe conceded this fact at his disciplinary hearings. Mullins said that Roscoe had a staff advisor present for the hearing in Case No. ROSP-2017-0664, and he waived the presence of a staff advisor for his hearing in Case No. ROSP-2017-0662.

Mullins said that he received witness and documentary evidence request forms from Roscoe on June 6, 2017. Mullins stated that Roscoe requested three inmate witnesses and their statements were obtained and read into the record at his hearings. Mullins said that he did deny Roscoe's requests to call the chaplain as a witness, as well as Roscoe's request for production of a copy of "The Will of God Part Three" by Louis Farrakhan, because he found these irrelevant to the charges. The charging officer, Gardner, and Officer Childress were present for both hearings and testified and responded to questions from Roscoe, Mullins said. Mullins said that he found Roscoe guilty of both charges and imposed a $15 fine in Case No. ROSP-2017-0662 and 30 days disciplinary segregation and a loss of good time in Case No. ROSP-2017-0664. Mullins provided a copy of the audio recordings of these hearing to the court in support of the Motion.

Mullins said that institutional review of Roscoe's disciplinary offense convictions was conducted by Unit Manager Collins, and Collins found that proper procedures were followed and that the assessed penalties were appropriate. Mullins said that Roscoe appealed these disciplinary convictions to both the Warden and

Regional Administrator, who both upheld his convictions, finding no procedural error. Mullins attached Roscoe's appeals, and the decisions, to his Affidavit. (Docket Item No. 25-1 at 23-31, 49-53.)

*II. Analysis*

The standard for review on a motion for summary judgment is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and

present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

Mullins argues that summary judgment should be entered in his favor because Roscoe has failed to demonstrate deprivation of a protected liberty interest without due process. Based on the evidence before the court, I agree with regard to his conviction in Case No. ROSP-2017-0662. In that case, a $15 fine was the only penalty imposed. Prisoners may not be deprived of life, liberty or property without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, the Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). Courts have held that small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest); *Bratcher v. Mathena*, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life).

When, however, state prison regulations create a system by which prisoners earn good-time credit resulting in reduction of their sentences, such system creates a liberty interest under the Fourteenth Amendment that may not be arbitrarily abrogated. *See Wolff*, 418 U.S. at 557-58. In Case No. ROSP-2017-0664, Mullins concedes, Roscoe received a loss of a protected liberty interest in that he received a loss of his good time credit. Nonetheless, Mullins argues that prisoners may not bring suit under § 1983 for relief that, if granted, would imply the invalidity of the

prisoner's disciplinary offense conviction, unless the conviction has been overturned. *See Edwards v. Balisok*, 520 U.S. 641, 645-48 (1997); *see also Thompson v. Clarke*, 2018 WL 4764294, at \*4 (W.D. Va. Sept. 30, 2018). Here, Roscoe is challenging the validity of his disciplinary offense convictions. The undisputed evidence before the court is that these disciplinary offense convictions were upheld on appeal and have not been overturned.

Based on the above, I find no genuine dispute of material fact and that the defendant is entitled to entry of summary judgment in his favor. An appropriate Order and Judgment will be entered.

**ENTERED**: September 10, 2019.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE